The State of Texas v. Ronnie Joe Miles, Jr.















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-376-CR
No. 10-98-377-CR
No. 10-98-378-CR

     THE STATE OF TEXAS,
                                                                              Appellant
     v.

     RONNIE JOE MILES, JR.,
                                                                              Appellee
 

From the 40th District Court
Ellis County, Texas
Trial Court Nos. 23608CR, 23609CR & 23610CR
                                                                                                              

MEMORANDUM OPINION
                                                                                                              

      Ronnie Joe Miles was convicted of delivery and possession of a controlled substance. On
December 8, 1998, the trial court granted Miles a new trial. The State filed a notice of appeal on
December 22, 1998. On June 3, 1999, the State filed a motion to dismiss its appeal. The relevant
portion of Rule 42.2 of the Texas Rules of Appellate Procedure states:
42.2 Voluntary Dismissal in Criminal Cases.
(a) At any time before the appellate court’s decision, the appellate court may dismiss the
appeal if the appellant withdraws his or her notice of appeal. The appellant and his or
her attorney must sign the written withdrawal and file it in duplicate with the appellate
clerk, who must immediately send the duplicate copy to the trial court clerk.

Tex. R. App. P. 42.2(a).
      We consider this rule to apply to appeals filed by the State as well as those filed by
defendants. However, when the State appeals, there is no individual to sign as “appellant.” Thus,
the signature of the State’s attorney should suffice to comply with the rule. We have not issued
a decision in this appeal, and the motion is signed by the State’s attorney. The motion is granted.
      The State’s appeal is dismissed.
 
                                                                                     PER CURIAM


Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Dismissed on State’s motion
Opinion delivered and filed June 16, 1999
Publish



tes
five nursing homes, that Terry’s mother Chelsea is also in the nursing-home business, and that
payments had been made by the corporation to Chelsea’s companies.
      Terry filed an inventory and appraisement, listing the 500 shares of the corporation as a
community asset and stating: “An evaluation of the value is being analyzed and this information
will be provided.” Barbara contends that the market value of the shares has been established by
the agreement, to which she is a party, and has not been changed. Terry contends that the
agreement has no effect because neither Terry nor Lane has died. Were the value of the
community-property interest in the shares to be set at $100,000, that asset would have more than
five times the net value of the next largest community asset—the home having a net equity of
$18,000 according to Terry’s inventory and appraisement. Excluding the shares and the home,
the total value of the remaining assets—again, according to Terry—is $9,316.85. We must
conclude that the effect of the agreement, if any, in determining the value of the shares of the
corporation will be a primary subject of dispute in the divorce case.
      Although the Texas Disciplinary Rules of Professional Conduct are not controlling as
standards governing motions to disqualify, they have been viewed by the courts as guidelines that
articulate considerations relevant to the merits of such motions. Spears v. Fourth Court of
Appeals, 797 S.W.2d 654, 656 (Tex. 1990). Because disqualification is a severe remedy, the
courts must adhere to an exacting standard when considering motions to disqualify so as to
discourage their use as a dilatory trial tactic. Thus, the burden is on the movant to establish the
necessity for disqualification with specificity. See id.
      Rule 1.06 of the Texas Disciplinary Rules of Professional Conduct provides, in part:
      Rule 1.06. Conflict of Interest: General Rule 
. . . 
(d) A lawyer who has represented multiple parties in a matter shall not thereafter represent
any of such parties in a dispute among the parties arising out of the matter, unless prior
consent is obtained from all such parties to the dispute. 
(e) If a lawyer has accepted representation in violation of this Rule, or if multiple
representation properly accepted becomes improper under this Rule, the lawyer shall promptly
withdraw from one or more representations to the extent necessary for any remaining
representation not to be in violation of these Rules. 
(f) If a lawyer would be prohibited by this Rule from engaging in particular conduct, no other
lawyer while a member or associated with that lawyer's firm may engage in that conduct.

Tex. Disciplinary R. Prof’l Conduct 1.06(d), (e), (f), reprinted in Tex. Gov’t Code Ann.,
tit. 2, subtit. G app. A (Vernon 1998) (Tex. State Bar R. art. X, § 9). Comment 9 to the rule,
states:
In certain situations, such as in the preparation of loan papers, or the preparation of a
partnership agreement, a lawyer might have properly undertaken multiple representation and
be confronted subsequently by a dispute among those clients in regard to that matter. 
Paragraph (d) forbids the representation of any of those parties in regard to that dispute unless
informed consent is obtained from all of the parties to the dispute who had been represented
by the lawyer in that matter.

Id. 1.06 cmt. 9.
      The record conclusively shows that the Naman firm represented multiple parties, i.e., Terry,
Barbara, Lane, and Kim during the estate planning process and in preparation of the agreement. 
See id. 1.06(d). The record further shows that there is a dispute in the divorce proceeding about
the effect of that agreement and that Barbara, having been represented by the Naman firm, has not
consented to the firm’s representation of Terry in the divorce case. See id. When the violation
was called to the firm’s attention, Selman rejected the notion that the firm had represented Barbara
in connection with the agreement and declined to withdraw. Under Rule 1.06(d), Filer—the
lawyer with the Naman firm who did the estate planning work, prepared the agreement, and
acknowledged that the firm represented Barbara—is disqualified from representing any of the
multiple parties to the agreement (the “matter” in the words of the rule) in a dispute among those
clients in regard to that matter. See id. Because Filer is disqualified, Selman and all other
members of the firm are disqualified. See id. 1.06(f).
      Terry also contends that Barbara waived her right to disqualification by waiting too long to
file the motion. Terry’s suit was filed on September 17, 2001. Selman sent the petition to
Barbara by letter with a waiver of citation, then talked to her when she called him. He advised
her to secure a lawyer. A counter-petition was filed on October 1. When Barbara called the Filer
letter to the attention of her lawyer, he sent a letter to Selman requesting that the Naman firm
withdraw without the necessity of a motion. Selman declined on November 29, and the motion
to disqualify was filed on November 30.
      Explaining the timing, Barbara testified that she is in poor physical condition and, when she
received a discovery request for copies of documents that were in her possession, she was unable
to go to the upstairs attic where they were stored to retrieve them. When her son got the records
for her, she went through the seven or eight boxes and discovered the Filer letter stating that she
was a client of the Naman firm. She was not cross-examined about any delay in asserting the
disqualification issue, and her testimony was not contradicted. She was the only witness who
testified.
      Nothing in the record indicates that the motion was filed on the eve of any final hearing or
trial date; indeed when the motion was filed and heard, the case was not set for trial. See
Wasserman v. Black, 910 S.W.2d 564, 569 (Tex. App.—Waco 1995, orig. proceeding). Under
these facts, Respondent could not have reasonably found that Barbara waived her right to insist
on disqualification.
      We conclude the trial court's failure to grant Barbara’s motion to disqualify was a clear abuse
of discretion for which she was left with no adequate remedy by appeal. We conditionally grant
the requested writ of mandamus to order Respondent to vacate his December 20, 2001 order and
enter an order granting the motion to disqualify the Naman firm. Because we are confident that
Respondent will comply with our decision within fourteen days, the writ will issue only if he fails
to do so.
                                                                         BILL VANCE
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
      (Justice Gray dissenting)
Writ conditionally granted
Opinion delivered and filed February 27, 2002
Publish
[CV06]